# Exhibit A

State of New Jersey

# The Governor's FY2020 Budget
## Detailed Budget



### Philip D. Murphy, Governor
Sheila Y. Oliver, Lt. Governor

Elizabeth Maher Muoio
State Treasurer

| David A. Ridolfino | | Lynn M. Azarchi |
|---|---|---|
| Acting Director | | Deputy Director |
| Jacki L. Stevens | Carisa M. Marone | Hannah R. Good |
| Associate Director | Assistant Director | Assistant Director |

Office of Management and Budget
March 2019
This document is available via the Internet at http://www.state.nj.us/treasury/omb/

shall also be applicable for a school facilities project approved by the Commissioner of Education and by the voters in a referendum after the effective date of P.L.2000, c.72 (C.18A:7G-1 et al.) and prior to the effective date of P.L.2008, c.39 (C.18A:7G-14.1 et al.).

Notwithstanding the provisions of section 9 of P.L.2000, c.72 (C.18A:7G-9) or any other law or regulation to the contrary, for the purpose of calculating a district's State Debt Service Aid, "M", the maintenance factor, shall equal 1.

In addition to the amount hereinabove appropriated for the School Construction and Renovation Fund account to make payments under the contracts authorized pursuant to section 18 of P.L.2000, c.72 (C.18A:7G-18), there are appropriated such other sums as the Director of the Division of Budget and Accounting shall determine are required to pay all amounts due from the State pursuant to such contracts.

The unexpended balance at the end of the preceding fiscal year in the School Construction and Renovation Fund account is appropriated for the same purpose.

Notwithstanding the provisions of section 4 of P.L.1997, c.72 (C.26:2H-18.58g), section 17 of P.L.2000, c.72 (C.18A:7G-17), or any law or regulation to the contrary, of the amount hereinabove appropriated to the School Construction and Renovation Fund such amounts as the Director of the Division of Budget and Accounting may determine first shall be charged to the Property Tax Relief Fund.

Notwithstanding the provisions of P.L.2007, c.260 (C.18A:7F-43 et al.) or any other law to the contrary, the amount hereinabove appropriated for Transportation Aid, in addition to the amount calculated pursuant to section 4 of P.L.2018, c.67 (C.18A:7F-68), shall include an amount calculated as follows: in the case of a school district in which the total number of nonpublic pupils eligible for transportation pursuant to P.L. 1968, c. 29 (C. 18A:39-1) exceeds 20,000, the school district shall receive $290 for each nonpublic pupil as reported on the October 2018 District Report of Transported Resident Students.

Notwithstanding the provisions of P.L.2007, c.260 (C.18A:7F-43 et al.) or any other law to the contrary, for any school district where the October 2017 resident enrollment exceeds 5,000 and the share of approved applications for students eligible for extraordinary aid pursuant to P.L. 2007, c. 260 (C. 18A:7F-55) in the 2017-2018 school year exceeds 5% of the district's October 2017 resident enrollment, the amount hereinabove appropriated for Special Education Categorical Aid, in addition to the amount calculated pursuant to section 4 of P.L.2018, c.67 (C.18A:7F-68), shall include $10,000 times the school district's projected 2019-2020 special education enrollment as used to calculate Special Education Categorical Aid pursuant to P.L. 2007, c.260 (C.18A:7F-55). This provision shall not impact the calculation of payments made to charter schools pursuant to P.L. 1995, c.426 (C.18A:36A-12).

Notwithstanding the provisions of any law or regulation to the contrary, the allocation of the amount hereinabove appropriated for Provisional Stabilization Aid shall be calculated as follows: for any school district that receives additional Transportation Aid and additional Special Education Categorical Aid calculated in accordance with the provisions hereinabove, the school district shall receive Provisional Stabilization Aid in the amount of $15,000,000.

Notwithstanding the provisions of P.L.2016, c.22 (C.18A:39-1d et al.) or any section of law to the contrary, in the case of any school district that receives nonpublic transportation aid hereinabove appropriated from Transportation Aid and meets the criteria for an "eligible district" as defined in subsection a of section 1 of P.L.2016, c.22 (C.18A:39-1d), in accordance with guidelines issued by the Commissioner, the board of education shall distribute to the consortium, as defined in subsection a of section 1 of P.L.2016, c.22 (C.18A:39-1d), an amount to be determined by the Commissioner for each nonpublic school pupil who is attending a nonpublic school which is a part of the consortium and who is required to be transported by the eligible district pursuant to P.L.1968, c.29 (C.18A:39-1). In accordance with guidelines issued by the Commissioner, the consortium shall assume the responsibilities of the eligible district under P.L.1968, c.29 (C.18A:39-1) for transporting to and from school the pupils for whom the consortium received the aid in-lieu-of transportation amount. If the per pupil cost of the lowest bid received exceeds the aid in-lieu-of transportation amount, then the parent or guardian of the student shall be eligible to receive the aid in-lieu-of transportation amount from the consortium for that school year. If after providing the required pupil transportation any of the disbursed funds remain unspent, the consortium, as it deems appropriate, may provide courtesy busing to pupils who are residents of the eligible district and are attending the nonpublic schools of the consortium. The consortium shall refund to the school district after the completion of the school year any unexpended funds received pursuant to this provision. The State monitor appointed pursuant to section 2 of P.L.2006, c.15 (C.18A:7A-55) shall enter into a contract with an independent entity to audit the consortium. The audit for the 2019-2020 school year shall be submitted to the State monitor no later than December 1 of the subsequent school year, and the State monitor shall transmit a copy of the audit to the Commissioner of Education. There shall be established an oversight committee to oversee the operations of the consortium, which shall consist of five members including: one member appointed by the State monitor; and four members appointed by the Commissioner, one of whom shall represent a nonpublic school which is part of the consortium.

### 30. EDUCATIONAL, CULTURAL, AND INTELLECTUAL DEVELOPMENT
### 32. OPERATION AND SUPPORT OF EDUCATIONAL INSTITUTIONS

**OBJECTIVES**

1. To provide preschool, elementary, middle and comprehensive high school programs for students who are deaf and students who have multiple disabilities and whose primary disability is deafness.

2. To provide support and technical assistance to educators and families across the state regarding best practices to meet the educational needs of students who are deaf or hard-of-hearing.

**PROGRAM CLASSIFICATIONS**

12. **Marie H. Katzenbach School for the Deaf.** The Marie H. Katzenbach School for the Deaf provides academic, career and technical educational services to students who are deaf and students who are deaf with additional disabilities from preschool through the age of twenty-one. Residential services will be provided to approximately 21% of the student population. Special programs to broaden the population served by the school include programs for preschool ages (3-5). The school's operating costs are supported by State appropriation and tuition.