**UNITED STATES DISTRICT COURT**
DISTRICT OF NEW JERSEY
**(609) 989-2182**

CHAMBERS OF
FREDA L. WOLFSON
CHIEF JUDGE

Clarkson S. Fisher Federal Building
& U.S. Courthouse
402 East State Street
Trenton, New Jersey 08608

**LETTER ORDER**

July 8, 2020

Michael I. Inzelbuch, Esq.
Attorney for Plaintiff
1340 West County Line Road
Lakewood, New Jersey 08701

Lauren A. Jensen, Esq.
Deputy Attorney General
State of New Jersey
25 Market Street
Trenton, New Jersey 08625

        **RE:**      *Lakewood Board of Education v. New Jersey Legislature, et al.,*
                  **Civ. Action No. 19-14690 (FLW)**

Counsel:

      In the above-referenced action, plaintiff Lakewood Board of Education ("Lakewood") filed a Complaint against the New Jersey Legislature (the "Legislature") and the New Jersey Department of Education (the "DOE"), as well as against various state officials in their official capacities,[1] arising from the Legislature's determination not to include approximately $30 million in additional funding for Lakewood in New Jersey's Annual Appropriations Act for Fiscal Year 2020 ("FY20"). In its Complaint, Lakewood asserts that the failure of the Legislature to appropriate such funds has caused Lakewood's students "to sustain actual damages" under federal law. Lakewood also asserts that, because of the Legislature's decision, Defendants have deprived Lakewood's students of a "thorough and efficient" public education that is guaranteed to children in the New Jersey Constitution.

---

[1] The following state officials have been named as defendants: Stephen M. Sweeney, in his official capacity as President of the New Jersey Senate; Craig J. Coughlin, in his official capacity as Speaker of the New Jersey General Assembly; and Lamont O. Repollet, in his official capacity as Commissioner of the DOE. These defendants, together with the Legislature and the DOE, are collectively referred to as "Defendants" in this Letter Order.

Presently before the Court is the motion of the DOE and its Commissioner (together, the "DOE Defendants") to dismiss Lakewood's Complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.[2]  In their motion, the DOE Defendants contend, *inter alia*, that Lakewood does not have standing to assert the various claims in the Complaint.  Lakewood opposes the motion, arguing that it has third-party standing to assert claims on behalf its students. Because the issues raised in the DOE Defendants' motion are not complex, in lieu of a formal opinion, I render my decision in this Letter Order, and **GRANT** the motion.

\*   \*   \*

The pertinent factual and procedural history of this case is recounted below.

The State of New Jersey operates on a fiscal year that begins on July 1 and ends on June 30 of the following calendar year.  *See* N.J.S.A. § 52:5-1.  Each year (typically in February or March), the Governor of New Jersey is required by law to present a "budget message" for the next fiscal year to the Legislature.  *See* N.J.S.A. § 52:27B-20.  In the budget message, the Governor presents proposed spending priorities for the next fiscal year.  *Id*.  Although the Governor has statutory authority to propose a budget, the power to expend and appropriate monies from the State treasury lies exclusively with the Legislature.  *See* N.J. Const. art. VIII, § 2, ¶ 2 ("No money shall be drawn from the State treasury but for appropriations made by law.").  Thus, before the fiscal year expires, the Legislature must pass an Annual Appropriations Act for the upcoming fiscal year. *Id*. ("All moneys for support of the State government and for all other State purposes as far as can be ascertained or reasonably foreseen, shall be provided for in one general appropriation law covering one and the same fiscal year.").  Once signed by the Governor, the Annual Appropriations Act controls state spending for the fiscal year.

On March 5, 2019, the Governor delivered his budget message for FY20.  (Compl. ¶ 15). The Governor's proposed budget sought to provide funding to Lakewood in addition to the state aid that is otherwise provided for under New Jersey law.  (*Id*. ¶ 15 & Ex. A).  In particular, under the Governor's proposed budget, Lakewood would have received approximately $30 million more in funding than it would have received under existing appropriations laws.  (*Id*.)

On June 20, 2019, the Legislature passed its Annual Appropriations Act for FY20, which was signed into law by the Governor on June 30, 2019.  *See* P.L. 2019, c. 150.  The Annual Appropriations Act for FY20 did not include the approximately $30 million of additional state aid for Lakewood that was recommended by the Governor in his annual budget message.  *Id*.  As a

---

[2]   Plaintiff does not appear to have effected service upon the other defendants named in the Complaint (*i.e*., the Legislature, President Sweeney, or Speaker Coughlin).  Indeed, Plaintiff has not filed any proof or waiver of service for those defendants, as is required under Rule 4 of the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 4(l)(1) and (d)(4).  Under Rule 4(m) of the Federal Rules of Civil Procedure, "[i]f a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time."  Fed. R. Civ. P. 4(m).  In this case, the 90-day period for Lakewood to effect service on the defendants other than the DOE Defendants has long since expired.  Accordingly, Lakewood is hereby given notice that the Complaint will be dismissed as to the unserved defendants, unless Lakewood shows cause for its failure to prosecute this action against those defendants within fourteen (14) days of the date hereof.

result, on July 1, 2019, the Commissioner of the DOE sent a letter to the State Treasurer recommending an advance of $36,033,862 in State aid to Lakewood—approximately $6 million more than Lakewood stood to receive through the Governor's proposed budget. (Compl. ¶ 22 & Ex. G.) The State Treasurer approved the recommended advance in state aid and directed the DOE to advance the sum of $36,033,862 to Lakewood. (*Id.* ¶ 25 & Ex. H.)

On July 3, 2019, Lakewood filed the present five-count Complaint against Defendants in federal district court. In the Complaint, Lakewood asserts that the additional $36 million in funds from the DOE is insufficient in both form—in that it is a loan requiring repayment—and substance—as Lakewood now purportedly requires a further $16,900,000 in order to provide a "thorough and efficient" education to its students. (Compl. ¶ 24, 26.) In Counts I-IV of the Complaint, Lakewood asserts claims pursuant to 42 U.S.C. § 1983, related to alleged violations of the civil rights of Lakewood's students under federal law. (*Id.* ¶ 28-53.)[3] In Count V of the Complaint, Lakewood asserts a separate claim pursuant to the New Jersey Civil Rights Act, related to an alleged violation of the New Jersey State Constitution. (*Id.* ¶¶ 54-58.) In each Count, Lakewood claims that Defendants have caused Lakewood's students to "to sustain actual damages" by committing "acts and omissions resulting in the removal of the Promised State Aid from the FY2020 Budget." (*Id.* ¶¶ 33, 35, 39, 40, 45, 47, 52, 53, 57, 58). Lakewood does not delineate the specific relief that it seeks; instead, Lakewood vaguely asserts after each Count in the Complaint that it "requests judgment in its favor, together with interest, costs, attorney's fees, and such other relief as this Court deems appropriate." (*Id.* at 9, 10, 11, 13, 14.)

\*   \*   \*

Article III of the United States Constitution limits the power of the federal judiciary to "cases" and "controversies." U.S. Const. art. 3, § 2. For a federal court to exercise jurisdiction under Article III, a plaintiff must allege—and eventually prove—that it has "standing" to pursue a claim. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559-61 (1992); *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990). The "irreducible constitutional minimum" of standing requires the plaintiff to demonstrate (1) that it has "suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (citing *Lujan*, 504 U.S. at 560-561). As relevant in this case, to satisfy the third requirement, *i.e.*, redressability, the plaintiff must establish that there is "a substantial likelihood that the requested relief will remedy the alleged injury in fact.'" *Toll Bros. v. Twp. of Readington*, 555 F.3d 131, 143 (3d Cir. 2009) (quoting *Vermont Agency of Nat. Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 771 (2000)).

Apart from the constitutional requirements for standing, courts have also recognized the "the longstanding basic rule" that "in the ordinary course, a litigant must assert his or her own legal rights and interests, and cannot rest a claim to relief on the legal rights or interests of third parties." *Amato v. Wilentz*, 952 F.2d 742, 748 (3d Cir. 1991) (quoting *Powers v. Ohio*, 499 U.S. 400, 410 (1991)). This rule against third-party standing, which "stems from prudential concerns,"

---

[3] More specifically, Lakewood asserts that Defendants have violated the students' rights under the following federal laws: Title VI of the Civil Rights Act of 1964 (*see* Count I, Compl. ¶¶ 28-35); the Equal Protection clause of the Fourteenth Amendment to the United States Constitution (*see* Count II, Compl. ¶¶ 36-40); the Individuals with Disabilities Education Act (*see* Count III, Compl. ¶¶ 41-47); and Section 504 of the Rehabilitation Act of 1973 (*see* Count IV, Compl. ¶¶ 48-53).

rather than the Constitution, serves at least two purposes. *Id*. (citations omitted). "First, the rule fosters judicial restraint: courts faced with unsettled questions avoid pronouncements that are perhaps unnecessary and undesirable because the rightholders do not wish to assert their rights." *Id*. (citing *Sec'y of State of Md. v. Joseph H. Munson Co.*, 467 U.S. 947, 955 (1984); *Singleton v. Wulff*, 428 U.S. 106, 113-14 (1976) (plurality opinion)). "Second, the rule assures concrete, sharp presentation of the issues and enables courts to avoid ruling on abstract grievances. Generally, the third party will be the best advocate of its own position, whereas the party attempting to assert the rights of another 'may place a slightly different, self-interested "spin" on its presentation.'" *Id*. (citing *Munson*, 467 U.S. at 955; *Singleton*, 428 U.S. at 114).

The prohibition against third-party standing, however, is not absolute. The Supreme Court has found that the principles animating these prudential concerns are not subverted if the plaintiff can demonstrate a requisite degree of injury to itself and if, under the circumstances, the injured third party on whose behalf the plaintiff is proceeding would likely not be able to pursue its own claims. *See, e.g. Craig v. Boren,* 429 U.S. 190, 193-94 (1976); *Eisenstadt v. Baird*, 405 U.S. 438, 443-46 (1972); *Barrows v. Jackson*, 346 U.S. 249, 258 (1953). Based on that recognition, third-party standing is permitted so long as the plaintiff can satisfy three "criteria": (1) the plaintiff "must have suffered an 'injury in fact,' thus giving him or her a 'sufficiently concrete interest' in the outcome of the issue in dispute"; (2) the plaintiff and the injured third party must have a "close relation[ship]"; and (3) "there must exist some hindrance to the third party's ability to protect his or her own interests." *Powers*, 499 U.S. at 411 (citations omitted); *see also Holland v. Rosen*, 895 F.3d 272, 287 (3d Cir. 2018); *Pa. Psychiatric Soc'y v. Green Spring Health Servs., Inc.*, 280 F.3d 278, 287-88 (3d Cir. 2002); *Amato*, 952 F.2d at 749.

\*   \*   \*

In this case, Lakewood asserts claims on behalf of its students, rather than claims on Lakewood's own behalf.[4] Therefore, Lakewood must satisfy both the constitutional requirements for Article III standing as well as the prudential criteria for third-party standing. Having examined Lakewood's claims, as well as the parties' arguments in connection with the present motion, I find that Lakewood has failed to demonstrate that a favorable decision against the DOE Defendants would provide Lakewood with any redress—which is a requirement for constitutional standing—or that the injured third parties in this case (*i.e.*, the students) face any real obstacles to pursuing their own claims—which is necessary for third-party standing.

With respect to redressability, Lakewood claims in its opposition papers that it is seeking "prospective relief to the ongoing funding deficit that is causing Lakewood to fail to provides its students a '[t]horough and [e]fficient' education." (Pl. Opening Br. at 5, ECF No. 12). "In other words," Lakewood contends, it "is petitioning the Court to order that the Legislature appropriate adequate funds to Lakewood." (*Id*.) As an initial matter, I note that this demand for relief appears nowhere in Lakewood's Complaint. However, even assuming that this Court could grant such relief against the Legislature (which body, as noted above, does not appear to have been served), the Court could not grant such relief against the DOE Defendants, because the authority to appropriate funds in New Jersey lies exclusively with the Legislature. *See* N.J. Const. art. VIII, §

---

[4] In their respective briefs, the parties both appear to characterize Lakewood's claims as third-party claims brought on behalf of its students. This characterization is confirmed by the inclusion by Lakewood of the following language in each of the five Counts of the Complaint: "Defendants have caused *Lakewood's . . . students* to sustain actual damages." (Compl. ¶ 35, 40, 47, 53, 58 (emphasis added).)

4

2, ¶ 2 ("No money shall be drawn from the State treasury but for appropriations made by law."); *City v. of Camden v. Byrne*, 82 N.J. 133, 148 (1980) ("[T]he power and authority to appropriate funds lie solely and exclusively with the legislative branch of government."). While there "appears to be an exception to the general rule requiring a legislative appropriation" if the plaintiff can show that "there is a constitutional right to payment," *Baraka v. McGreevey*, 481 F.3d 187, 204 (3d Cir. 2007) (citing *New Jersey Div. of Youth & Family Servs. v. D.C.*, 118 N.J. 388, 571 A.2d 1295, 1301 (1990); *Robinson v. Cahill*, 69 N.J. 133, 351 A.2d 713 (1975)), Lakewood has made no attempt at showing that this exception applies in this case.[5] Thus, I find that Plaintiff has failed to demonstrate that a favorable decision in this case against the DOE Defendants would provide Lakewood with any redress.

Turning to the issue of third-party standing, Lakewood claims in its opposition papers that Lakewood's students face obstacles to protecting their own interests because they "are minors that are unable to assert their own claims in court." (Pl. Opening Br. at 8, ECF No. 12.) Additionally, Lakewood asserts that "any discrimination or similar claim brought by any single student would be vulnerable to the State asserting that such a claim is too far attenuated from the funding shortfall that is the basis of the claim." (*Id.*) I find neither of these arguments persuasive. First, while minor students often do not have the capacity to file lawsuits on their own, their parents or guardians may—and, in the Court's experience, they frequently do—file lawsuits on behalf of students. *See* Fed. R. Civ. P. 17(c). Second, Lakewood's speculation of what the State may or may not argue in response to potential individual claims by students is insufficient to show that Lakewood's students are prevented from pursuing their own claims. Unlike in the key cases in which the Supreme Court has permitted third-party claims, there is no indication here that the students or their parents face any obstacles to litigating their claims themselves. Thus, I find that Lakewood has failed to overcome the general prohibition against third-party standing.[6]

\*   \*   \*

In sum, Lakewood has not established that a favorable decision against the DOE Defendants would provide Lakewood with any redress in this case or that Lakewood's students face any real obstacles to pursuing their own claims. Thus, Lakewood has failed to satisfy both

---

[5] The DOE Defendants did not raise the issue of redressability in their opening brief, but instead waited to raise it in their reply brief. (*See* Defs. Reply Br., at 3-4, ECF No. 15.) Under normal circumstances, I would not expect a plaintiff to respond to arguments in opposition that were not first raised in a defendant's opening brief. In this case, however, Lakewood filed a sur-reply (albeit, without first seeking leave of the Court to do so) and, therefore, has had a sufficient opportunity to respond to the DOE Defendants' argument regarding the Court's lack of authority to grant relief. Lakewood failed to use that opportunity.

[6] The parties also dispute whether Lakewood has suffered a sufficient "injury" to satisfy the prudential criteria for standing. In its opposition brief, Lakewood asserts that it meets this requirement because the school district's "failure to provide its students with an adequate education means that it is potentially liable in lawsuits brought by those students or their families." (Pl. Opp. Br. at 7, ECF No. 12.) Although the risk of potential future litigation is likely too "conjectural or hypothetical" to establish the requisite "injury-in-fact" for constitutional standing purposes, *see Stevens*, 529 U.S. at 771, it is not clear whether such an "injury" is sufficient for prudential standing purposes. In any event, I need not decide that issue in this case, since I find that Lakewood has failed to show that any of the alleged harms suffered by Lakewood's students are redressable by a favorable decision against the DOE Defendants.

5

the constitutional requirements for Article III standing and the prudential criteria for third-party standing. Accordingly, the DOE Defendants' motion to dismiss is **GRANTED** for lack of standing pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.[7]

**IT IS SO ORDERED.**

/s/ Freda L. Wolfson
Hon. Freda L. Wolfson
U.S. Chief District Judge

---

[7] I note that, even if Lakewood had established its standing to bring the asserted claims, Lakewood's failure to state a specific demand for relief in its Complaint would provide alternative grounds for granting the present motion. *See* Fed. R. Civ. P. 8(a) (stating that "[a] pleading that states a claim for relief must contain . . . a demand for the relief sought, which may include relief in the alternative or different types of relief").